[Crim. No. 3453.   Third Dist.   Oct. 1, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES WIL-
LIAM ALLEN et al., Defendants and Appellants.

Bill Holden, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and John L. Giordano, Deputy Attorney General, for Plaintiff and Respondent.

FRIEDMAN, J.—On October 1, 1962, defendants were charged by information with attempted robbery and assault by means of force likely to produce great bodily injury. After several continuances trial was set for November 26. On that day the district attorney moved to dismiss the information in order to charge defendants with robbery. The district attorney did not attempt to amend the information or to file an amended information. Over defense objection, the dismissal was permitted. On December 3, 1962, defendants were indicted by the grand jury, which charged them with robbery and assault by means of force likely to produce great bodily injury. On December 11 defendants filed petitions for habeas corpus alleging denial of their right to a speedy trial. After hearing argument the court denied the petitions and set the trial for January 8, 1963. At the outset of the trial defense counsel moved for dismissal of the indictments, again urging denial of speedy trial. The motions were denied and the trial then proceeded. It culminated in guilty verdicts on both counts. The court entered judgment sentencing defendants to prison on both charges. Defendants appeal.

Victim of the robbery and assault was Suey Sing Seu, who operated a laundry in Sacramento. Mr. Seu resided in an apartment at the rear of the laundry. According to his testimony, his laundry was open for business but he was in the residential area at the rear doing dishes when defendants entered the laundry. Seu recognized defendant Allen as one of his customers. Allen had a bag over his hand, informed Seu he had a gun and ordered him into the rear of the building. When Seu refused to move defendant Masterson went around the corner separating the customer area from the working area, knocked Seu to the floor with his fist, then struck him several times around the face. Allen came behind

the counter during the beating and continued to threaten Seu with the gun allegedly concealed in the bag. Actually, it was never established that Allen had a gun. Allen then entered Seu's living quarters at the rear. Masterson followed. About 10 minutes later they left the building through the rear door, jumped several fences, and made their way back to the street in front of the laundry. When they left the building Seu went to the front door and called for help. He saw defendants walking down the street but no effort was made to apprehend them.

As a result of his injuries Seu was hospitalized for two weeks. Defendants were arrested on the day after the incident, however. A search of Masterson's car produced a revolver. When Seu returned home from the hospital he discovered that a revolver was missing from a suitcase he kept in his apartment. The missing revolver was that which had been found in Masterson's car.

Seu's testimony was substantiated by a woman who came to the front door of the laundry while Masterson was beating Seu. She testified that the door was locked, notwithstanding a sign with the legend "open," and that she saw Masterson rise up behind the counter and motion her to leave. She left to summon the police. Another witness testified he heard Seu screaming and saw defendants leave through the back way and jump several fences.

Defendants took the stand and told a story in sharp conflict with Seu's testimony. According to defendants, they entered the laundry and Allen told Seu that he was currently without money and would like to have some clothes laundered on credit. On hearing the word "money," Seu started shouting "Money, money," withdrew a gun from under the counter and threatened defendants. Allen jumped Seu, hit him several times and with Masterson's help was able to get the gun away. Defendants then left the laundry.

The Attorney General has very properly conceded trial court error in imposition of separate punishments for robbery and assault. The assault was the means by which the robbery was committed and both were the components of an indivisible criminal transaction. The dual sentences thus violate Penal Code section 654. The conviction of assault, which is the less serious offense, must therefore be reversed. (*People v. Logan*, 41 Cal.2d 279, 290-291 [260 P.2d 20].)

There are two reasons for rejection of defendants'

present charge that they were deprived of timely trial. First: Article I, section 13, of the state Constitution guarantees accused persons a speedy trial and Penal Code section 1382, subdivision 2, demands that felonies be brought to trial within 60 days from indictment or information. The trial court had discretionary power to permit dismissal of the information filed by the district attorney. (Pen. Code, § 1385.) That action did not bar further prosecution for the same offenses. (Pen. Code, § 1387; *People* v. *Combes*, 56 Cal.2d 135, 145 [14 Cal.Rptr. 4, 363 P.2d 4].) The institution of a new proceeding, in this case by the filing of an indictment charging robbery rather than an attempt, reinstated the 60-day period. (*People v. Wilkes*, 177 Cal.App.2d 691, 697 [2 Cal.Rptr. 594].)

■ Second: The right to speedy trial receives protection pending trial by motions to dismiss or by mandate, prohibition or habeas corpus. Defendants pursued such remedies, although unsuccessfully. After trial and conviction, however, violation of the right to speedy trial does not compel reversal of the conviction unless the delay has deprived the accused of a fair trial or caused him other prejudice. (*People* v. *Wilson*, 60 Cal.2d 139, 148 - 154 [32 Cal.Rptr. 44, 383 P.2d 452].) Defendants claim prejudice because they were in continual custody. Their trial commenced 99 days after the original information was filed. In a sense, excess durance of 39 days is prejudicial to any man. ■ Here, however, prejudice must be measured by article VI, section 4½, of the state Constitution, that is, by the yardstick of miscarriage of justice. A miscarriage of justice occurs when it is reasonably probable that a more favorable result would have been reached had it not been for the error. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].) ■ When we ask ourselves whether the delay might have caused a conviction which could have been defeated, the answer is a speedy negative. The delay did not result in a miscarriage of justice.

■ Defendants assail the trial court's ruling admitting in evidence a photograph of Seu taken shortly after the beating, contending that its prejudicial effect outweighed its materiality. The photograph displays a face covered with dried blood, suffused by contusions, with abrasions on the lip, chin and nose, a deep cut on one cheekbone and one eye swollen shut. The photograph is somewhat gruesome and certainly pitiable. It could easily have aroused the jurors' anger. ■ Whether prejudice created by a photograph outweighs its probative effect is a question for the sound discre-

tion of the trial court. (*People* v. *Chavez,* 50 Cal.2d 778, 792 [329 P.2d 907].) ██ Defendants were on trial for an assault by means of force likely to produce great bodily injury. (Pen. Code, § 245.) The prosecutor had the task of convincing the jury that Masterson's fists had been applied with enough force and in such manner as to bring his act within the statute. (*People* v. *Score,* 48 Cal.App.2d 495, 498 [120 P.2d 62].) The prosecutor was not required to pick out the exact point at which the evidence became barely sufficient to accomplish that objective. (*People* v. *Ornelas,* 17 Cal. App.2d 608, 611-612 [62 P.2d 608].) The character and extent of the victim's injuries were probative elements in demonstrating the degree of force. Thus the trial court did not abuse its discretion in admitting the photograph.

██ ██ At the trial Seu testified that the revolver was taken from a suitcase which he kept beside his bed, that there were two other suitcases beneath the bed. At the preliminary hearing Seu gave testimony which, by a process of interpretation, might indicate that the gun was in a suitcase underneath instead of beside his bed. Defendants point to these claimed inconsistencies, also to the improbability that in the course of their claimed flight through Seu's living quarters, they paused to plunder suitcases. Such faulty testimony, they now contend, is inherently improbable.

Inherent improbability is one thing, inconsistency another. Inconsistent statements may not be removed from the array of evidence simply by tagging them as inherently improbable. (See *People* v. *Headlee,* 18 Cal.2d 266, 267-268 [115 P.2d 427].) There was a language barrier and Seu testified through an interpreter. Even if the existence of inconsistencies is assumed, it was for the fact trier to weigh them and to accept or reject the witness' testimony. (*People* v. *McKinney,* 152 Cal.App.2d 332, 335 [313 P.2d 163].)

██ Defendants urge that inconsistencies in Seu's testimony should have moved the trial judge to furnish the jury with comments on the evidence, as he was empowered to do by article VI, section 19, of the state Constitution; that, so glaring were the inconsistencies, his failure to exercise his power was an abuse of discretion which merits reversal. The trial court had the power but not the duty of comment on the evidence. (*People* v. *Blankenship,* 171 Cal.App.2d 66, 85 [340 P.2d 282].) Seu's testimony was nowhere near as inconsistent as defendants suggest; in many respects it was corrobo-

rated by other witnesses and by circumstantial evidence; and finally, the jury were the exclusive judges of Seu's credibility. This novel contention of defendants must be rejected.

Other claims of error deal solely with the assault conviction, which is being reversed in any event. Thus we need not discuss them.

The judgment of conviction of assault by means likely to produce great bodily injury is reversed. The judgment of conviction of robbery is affirmed.

Pierce, P. J., and Schottky, J., concurred.